### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **JOHN SABO,** | : | **Bankruptcy No. 04-31623-MBM** |
| Debtor. | : | |
| ............................................................ | : | ............................................................ |
| **Mortgages Plus, Inc.,** | : | Chapter 7 |
| Plaintiff, | : | |
| | : | |
| v. | : | **Adversary No. 04-3381-MBM** |
| | : | |
| **John Sabo,** | : | |
| Defendant. | : | |

### MEMORANDUM

**AND NOW,** this **5th day** of **October, 2005**, upon consideration of (a) the adversary complaint brought by Mortgages Plus, Inc., plaintiff herein (hereafter "Mortgages Plus"), wherein Mortgages Plus seeks a determination that its claim for $75,000 against John Sabo, the instant debtor and defendant herein (hereafter "the Debtor") is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), and (b) the Debtor's answer, as well as the various exhibits produced at trial;

and subsequent to notice and a trial on the matter held on October 3, 2005,

it is **hereby determined that the Court shall issue an order to the effect that** Mortgages Plus' $75,000 claim is **DISCHARGED**, that is such claim is **NOT EXCEPTED** from the Debtor's discharge pursuant to § 523(a)(4).  The Court rules as it does for several reasons.

As an initial matter, the Court notes that Mortgages Plus formally contends

that its $75,000 claim is nondischargeable under § 523(a)(4) for two discrete reasons, namely that such claim represents a debt either for (a) fraud while acting in a fiduciary capacity, or (b) embezzlement. The $75,000 claim was reduced to a judgment note executed by both parties on August 30, 2004, and such note represents that such claim is for the overpayment of income by the Debtor to himself for the period from January 2001 through January 2004.

During the period from January 1, 2002, through approximately December 31, 2003, the Debtor operated a separate branch of Mortgages Plus' business (hereafter the "Branch") pursuant to a contract, which contract, *inter alia*, provided (a) for the Debtor to be compensated at an annual amount equal to the net profits of the Branch less particularized deductions, and (b) an entitlement to the Debtor of monthly draws against such net profits not to exceed $3,000. The contract contemplated that net profits of the Branch would be calculated within 90 days after Mortgage Plus' fiscal year ended.

As the Court understands it, Mortgages Plus contends that the Debtor (a) engaged in fraud by taking monthly draws far in excess of $3,000, by failing to pay certain of the Branch expenses, and by consequently withdrawing from the operations of the Branch amounts ultimately far in excess of the Branch's net profits, and (b) was a fiduciary with respect to Mortgages Plus simply by virtue of the trust relationship created by the contract between the two parties.

Mortgages Plus, in order to succeed in excepting its $75,000 claim from discharge, must prove by a preponderance of the evidence that such claim constitutes a debt that is described within § 523(a)(4). *See, e.g.,* In re Spector,

2

133 B.R. 733, 738-39 (Bankr.E.D.Pa. 1991).

## I.

The Court holds that Mortgages Plus' $75,000 claim does not constitute a debt for fraud or defalcation by the Debtor while acting in a fiduciary capacity because the Court concludes, in turn, that the Debtor did not act in a "fiduciary capacity" within the meaning of such phrase for purposes of § 523(a)(4). As this Court has previously held:

> "The definition of 'fiduciary capacity' is a matter of federal law, which has consistently limited its scope to the capacity of one who holds property under either an express trust or ... a technical trust." "Although the necessary fiduciary relationship under § 523(a)(4) is a question of federal law, state law determines the existence of a trust." ... "A technical trust is [commonly taken by courts today to mean] a trust imposed by state common law or statute."

In re Ardolino, 298 B.R. 541, 546-47 (Bankr.W.D.Pa. 2003) (citations omitted). Furthermore, courts uniformly hold that § 523(a)(4) does not refer to those trust relationships that are merely implied from a contract. *See, e.g.,* Spector, 133 B.R. at 739 (citing Davis v. Aetna Acceptance Co., 293 U.S. 328, 333-34, 55 S.Ct. 151, 153-54, 79 L.Ed. 393 (U.S. 1934)). The Court holds that neither an express trust nor a statutory trust existed between the parties because, if for no other reason, the Court, at the conclusion of trial, specifically asked of counsel for Mortgages Plus whether it took the position that an express trust or statutory trust existed between the parties and such counsel answered in the negative.

Furthermore, because of such answer, and since the Court's own analysis of the facts in this case and pertinent law yields a conclusion that neither an express trust nor a statutory trust existed between the instant parties, the Court, as set forth above, ascertains that Mortgages Plus predicates its position vis-a-vis "fiduciary relationship" in the instant proceeding upon the trust relationship that was created by the contract between the two parties – such a trust relationship, as just set forth, is insufficient to establish a "fiduciary relationship" for purposes of § 523(a)(4). Given the foregoing, the Court is constrained to (a) conclude that the Debtor did not act in a "fiduciary capacity" within the meaning of such phrase for purposes of § 523(a)(4), and (b) hold that Mortgages Plus' $75,000 claim does not constitute a debt for fraud or defalcation by the Debtor while acting in a fiduciary capacity.

## II.

As for whether Mortgages Plus' $75,000 claim constitutes a debt for embezzlement, the Court, for the reasons set forth below, concludes that it does not. One of the necessary elements to establish embezzlement is that a debtor have *appropriated funds* for the debtor's own benefit by *fraudulent intent or deceit*. *See* Ardolino, 298 B.R. at 545 (emphasis added) (citing Collier on Bankruptcy). The Court concludes that Mortgages Plus fails to preponderantly prove that the Debtor appropriated any money from the Branch with fraudulent intent. In particular, the only money that the Debtor is alleged to have appropriated from the Branch is roughly $126,000 in draws taken by virtue of checks drawn on the Branch bank account by the Debtor.

4

With respect to the $3,000 monthly draws expressly contemplated by the parties' contract, the Court is at a loss to understand how the Debtor, by taking such draws, engaged in fraud, even accepting *arguendo* that the Debtor contractually may have been bound to ultimately return some of such draws after the year-end balancing of the Branch's financial numbers. Because the parties' contract allowed for such draws, the Debtor did not engage, indeed could not have engaged, in fraud by taking them – that the Debtor, as just set forth, may have contractually been responsible at some point for returning some of such draws does not somehow make improper the taking of such draws in the first place. Furthermore, the testimony elicited at trial does not preponderantly establish that, when the Debtor took his various draws, he had been informed, or was then independently aware, that net profits of the Branch at year end would be insufficient to support at least a monthly draw of $3,000, or $36,000 per year – consequently, even if such knowledge by the Debtor (or not) was relevant to the issue of fraud on his part vis-a-vis the monthly $3,000 draws, the Court holds that such knowledge was not preponderantly proven to have existed. Accordingly, $72,000 of the total draws taken (i.e., $3,000 x 12 months x 2 yrs.) were not taken by the Debtor with fraudulent intent.

As for the balance of the $126,000 in draws, or $54,000, the Court understands the Debtor to assert, and does not find that Mortgages Plus disproved, that he took draws in such total amount as commissions on loans that he originated during the course of the period from January 1, 2002, through approximately December 31, 2003. Mortgages Plus contends that the parties'

contract did not allow for the payment of such commissions to the Debtor, while the Debtor asserts that such commissions were contractually provided for. In order for Mortgages Plus to establish that the Debtor took the $54,000 in draws with fraudulent intent, Mortgages Plus must preponderantly prove that the Debtor knew, when he paid himself commissions in such amount, that he was not entitled to the same. The Court concludes that Mortgages Plus fails to preponderantly prove as much because

(a)  the parties agree that, prior to the commencement of the parties' contract for at least some period of time, the Debtor was a full time management employee of Mortgages Plus, and that, as such, he was paid commissions by Mortgages Plus – the Debtor testified that he thought such practice was to continue subsequent to the commencement of the parties' contract, and Mortgages Plus, the Court concludes, did not disprove that that was what the Debtor actually thought; and

(b)  the parties contract, at ¶ 4.1 (dealing with "Certain Fringe Benefits"), expressly provides that "Sabo shall further be entitled to receive such other benefits ... as are generally provided from time to time by the Company [(i.e., Mortgages Plus)] to its full time management employees" – such contract provision, even if arguably it does not, in fact, operate to allow for the earning of commissions by the Debtor, would at least provide the Debtor with a basis for believing in good faith that he was entitled to the payment of commissions, particularly given that he was, at one time, a management employee that enjoyed the earning of commissions.

Accordingly, the remaining $54,000 of the total draws taken were not taken by the Debtor with fraudulent intent.

Given the foregoing, the Court is constrained to hold that Mortgages Plus' $75,000 claim does not constitute a debt for embezzlement.

### III.

For all of the foregoing reasons, the Court determines that it shall issue an order to the effect that Mortgages Plus' $75,000 debt is **DISCHARGED**, that is such debt is **NOT EXCEPTED** from the Debtor's discharge pursuant to § 523(a)(4).

**BY THE COURT**

      **/s/**
**M. BRUCE McCULLOUGH,**
**U.S. Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** : | |
| : | |
| **JOHN SABO,** : | |
| : | **Bankruptcy No. 04-31623-MBM** |
| Debtor. : | |
| : | |
| **Mortgages Plus, Inc.,** : | **Chapter 7** |
| Plaintiff, : | |
| : | |
| v. : | **Adversary No. 04-3381-MBM** |
| : | |
| **John Sabo,** : | |
| Defendant. : | |

## ORDER OF COURT

**AND NOW,** this **5th day** of **October, 2005**, for the reasons set forth in the accompanying Memorandum of the same date, it is **hereby ORDERED, ADJUDGED, AND DECREED** that the $75,000 claim of Mortgages Plus' is **DISCHARGED**, that is such claim is **NOT EXCEPTED** from the Debtor's discharge pursuant to § 523(a)(4).

                                              **BY THE COURT**

                                              **/s/**
                                              **M. BRUCE McCULLOUGH,
U.S. Bankruptcy Judge**

To be served by case administrator:
Henry W. Horvat, Esq.
David J. Romito, Esq.